```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION

CONSTRUCTION WORKERS PENSION    )
TRUST FUND LAKE COUNTY AND      )
VICINITY,                       )
                                )
          Plaintiff             )
                                )
     v.                         )   Case No. 2:05 CV 167
                                )
REEVES FENCE CO., INC.,         )
                                )
          Defendant             )
```

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendant, Reeves Fence Company, Inc., on December 2, 2005.  For the reasons set forth below, this motion is **DENIED**.

Background

Reeves Fence Company ("Reeves") is a signatory to a collective bargaining agreement ("CBA") with the International Association of Ridge, Structural and Ornamental Iron Workers No. 395 ("Ironworkers").  While a party to this CBA, Al Reeves, on behalf of the company, also signed three one-year "Fencing Addendums" effective June 1, 2001 through May 31, 2004.  In pertinent part, the two-page addendums stated:

> This agreement is entered into between Reeves Fence Company and the International Association of Ridge, Structural and Ornamental Iron Workers Local Union #395 and Laborers' International Union of North America, Local #41 and Local #81.
>
> It is understood by the Parties of this Agreement that the wages set in this addendum shall be established and negotiated by Iron Workers Local #395 and Laborers Local #41 and

>   #81. All fringe benefits will be in conjunc-
>   tion with the Ironworkers and Laborers' re-
>   spective Building Collective Bargaining
>   Agreements and all provisions of those agree-
>   ments, not specifically addressed in this
>   addendum will govern the Parties of this
>   Agreement.
>
>   *See* Al Reeves Dep. Exh 1-3

The addendums were signed by Reeves, representatives of Ironworkers Local #395, and representatives of Laborers Local #41 and #81 ("Laborers").  The second and third consecutive addendums further specified the rate at which "Welfare, Pension, Training, CAF and BCRC" contributions were to be paid.

Reeves was not a signatory to the Laborers' CBA, was not provided with a copy of the CBA, and was not contacted by representatives of the Laborers regarding any obligations owed to its members.  Furthermore, at all times Al Reeves believed that the Fencing Addendums related only to Reeves' relationship with the Ironworkers.

The Construction Workers Pension Trust Fund of Lake County and Vicinity ("Pension Fund") manages the multiemployer pension fund established under the CBAs governing both the Laborers and Ironworkers.  In 2004, the fund conducted a payroll audit of Reeves for January 1, 2001 through December 31, 2003 and concluded that Reeves owed the Pension Fund more than $73,000 in delinquent contributions based on its obligations to the Laborers.  The Pension Fund subsequently filed suit in this court pursuant to §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, and §§502 and 515 of the Employee Retirement

2

Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145, seeking an accounting of the number of individuals employed by Reeves and judgment in the amount determined by the audit.

### Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); **Lawrence v. Kenosha County**, 391 F.3d 837, 841 (7th Cir. 2004); **Branham v. Snow**, 392 F.3d 896, 901 (7th Cir. 2004); **Windle v. City of Marion, Indiana**, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. **Adickes v. S.H. Kress & Company**, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); **Lawrence**, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); **Lawrence**, 391 F.3d at 841; **Hottenroth v. Village of Slinger**, 388 F.3d 1015, 1027 (7th Cir. 2004); **Palmer v. Marion County**, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from

3

those facts.  *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *See also* *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); *Celotex Corp.*, 477 U.S. at 322-323, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901;

4

*Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Reeves first argues that the Laborers' pension fund has no standing to bring suit under ERISA. The Circuit Courts of Appeals are split "as to whether pension plans have standing under 29 U.S.C. §1132(d)(1) to make an ERISA claim." *Via Christi Regional Medical Center, Inc. v. Blue Cross and Blue Shield of Kansas, Inc.*, 361 F.Supp.2d 1280, 1289 (D. Kan. 2005)(collecting cases). Suggesting that the Second Circuit's view is more consistent with Supreme Court precedent, Reeves encourages the court to follow that Circuit. *See, e.g., Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Company*, 700 F.2d 889 (2nd Cir. 1983). However, the Seventh Circuit repeatedly has held that multiemployer plans have standing to sue under ERISA for delinquent contributions. *See Central States, Southeast and Southwest Areas Pension Fund v. Schilli Corporation*, 420 F.3d 663, 670 (7th Cir. 2005); *Peoria Union Stock Yards Company Retirement Plan v. Penn Mutual Life Insurance Company*, 698 F.2d 320, 326 (7th Cir. 1983). *See also Coleman Clinic, Ltd. v. Massachusetts Mutual Life Insurance Company*, 698 F.Supp. 740, 744-45

5

(C.D. Ill. 1998). Because this court follows the Seventh Circuit, Reeves' standing argument must be rejected.

Neither the Supreme Court case on which Reeves relies, nor the Seventh Circuit cases Reeves argues are consistent with the Supreme Court, say what Reeves suggests. *See **Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Company***, 484 U.S. 539, 547, 108 S.Ct. 830, 835, 98 L.Ed.2d 936 (1988); ***Mutual Life Insurance Company of New York v. Yampol***, 840 F.2d 421, 423 (7th Cir. 1998); ***Winstead v. J.C. Penney Company, Inc.***, 933 F.2d 576, 578-79 (7th Cir. 1991).  For example, the trustees of a benefit plan brought suit for unpaid contributions in ***Advanced Lightweight***.  *See* 484 U.S. at 542, 108 S.Ct. at 832.  The Supreme Court simply noted that these trustees had standing but made no other comment with respect to the scope of standing under ERISA. *See **Advanced Lightweight***, 484 U.S. at 548, 108 S.Ct. at 830. Similarly, the Seventh Circuit noted  the circuit split in ***Yampol*** and expressly declined to find whether the plan itself had standing. *See* 840 F.2d at 423.  Likewise, the ***Winstead*** court declined to resolve the issue because a fund's trustees, who were the plaintiffs in that case, "indisputably are ERISA fiduciaries." *See* 933 F.2d at 579. Because these cases do not cast doubt on the Seventh Circuit's position, they do not alter the court's ruling here.

Turning to Reeves' substantive arguments, the court interprets ERISA and LMRA claims based on labor agreements according to a federal common law of contracts. *See **GCIU Employer Retire-***

6

ment Fund v. Chicago Tribune Company, 66 F.3d 862, 864-65 (7th Cir. 1995). See also Moriarty v. Muzyka, 379 F. Supp.2d 935, 948-49 (N.D. Ill. 2005). Under federal law, the court must "interpret the terms of a contract in an ordinary and popular sense as would a person of average intelligence and experience." GCIU, 66 F.3d at 865 (internal quotations and alterations omitted).  If the contract is not ambiguous, the court construes its terms as a matter of law, without reference to extrinsic evidence. See GCIU, 66 F.3d at 865; Illinois Conference of Teamsters and Employers Welfare Fund v. Mrowicki, 44 F.3d 451, 459 (7th Cir. 1995).  Further, it is only when the contract is "truly ambigous" that the parties' subjective understandings will prevail over the terms of the contract. See Central States, Southeast, Southwest Areas Pension Fund v. Kroger Company, 226 F.3d 903, 911 (7th Cir. 2000).

Reeves argues that the fencing addendums are unenforceable as pre-hire agreements under §8(f) of the LMRA. With no citation to authority, Reeves claims that §8(f) "simply [alters] the timing of when a collective bargaining agreement may be entered into," and suggests that §8(f) does not authorize agreements other than a traditional CBA. See Reply Brief, pg. 3. More specifically, Reeves argues that §8(f) does not eliminate the need for certain terms that would be present in a CBA such as an "exclusive bargaining agent" recognition clause.  Therefore, Reeves' argument goes, the fencing addendums are unenforceable

7

because they do not designate the Laborers as the exclusive bargaining agent of Reeves' workers.

According to the Seventh Circuit, "[a] pre-hire agreement is a contract agreed to by a union and an employer before the workers to be covered by the contract have been hired or before the union has attained majority status among the firm's employees." *J.W. Peters, Inc. v. Bridge, Structural and Reinforcing Iron Workers, Local Union 1, AFL-CIO*, 398 F.3d 967, 969 n.1 (7th Cir. 2005)(en banc). Section 8(f) creates an exception to the CBA requirements in the LMRA and "allows employers in the building and construction industry to enter a collective bargaining agreement with a union before the union has attained majority status among the firm's employees." *N.L.R.B. v. O'Daniel Trucking Company*, 23 F.3d 1144, 1146 (7th Cir. 1994) (*citing* *New Berlin Grading Company v. N.L.R.B.*, 946 F.2d 527, 529 (7th Cir. 1991)). *See also* *N.L.R.B. v. Goodless Brothers Electric Company, Inc.*, 285 F.3d 102, 105 (1st Cir. 2002)("A Section 8(f) employer-union relationship is known as a 'prerecognition agreement;' the employer does not formally recognize the union, but only agrees to bargain with it for a limited period of time.").

Pension and welfare plans, though not parties to pre-hire agreements, are third party beneficiaries of such agreements. *See* *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1151 (7th Cir. 1989). As third-party beneficiaries, these plans are entitled to enforce an employer's ERISA obligations pursuant to the Multiemployer

Pension Plan Amendment Act ("MPPAA"), 29 U.S.C. §1145. *See **Gerber Truck***, 870 F.2d at 1152-53.  The MPPAA, which adds §515 to ERISA, states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
>
> 29 U.S.C. §1145.

Moreover, §515 enables plans to seek tardy contributions under an agreement "even though there was no collective bargaining agreement under §301 of the LMRA." ***Laborers' Pension Fund v. Joe Cachey Construction Company, Inc***. 947 F.Supp. 365, 373 (N.D. Ill. 1996). The broad enforcement powers authorized by §515 enable plans to enforce labor agreements according to their terms "without regard to understandings or defenses applicable to the original parties [the employer and the union]." ***Laborers' Pension Fund v. A&C Environmental, Inc.***, 301 F.3d 768, 778 (7th Cir. 2002) (*quoting **Gerber Truck***, 870 F.2d at 1149). Thus, §515 forecloses contract defenses to the validity of an agreement such as "fraud in the inducement, oral side agreement, course of performance, want of consideration, [and] failure of the union to have majority support" in ERISA suits. ***Gerber Truck***, 870 F.2d at 1154.

For example, in ***Gerber Truck***, Gerber and a union representative agreed that Gerber would sign a "participation agreement" that obligated Gerber to make pension and welfare contributions

9

to all truck drivers represented by the union, but further orally agreed that the obligation would not be enforced except for with respect to three employees. In concluding that Gerber was required to contribute to the pension and welfare funds despite an oral agreement to the contrary, the Seventh Circuit noted that "nothing in ERISA makes the obligation to contribute depend on the existence of a valid collective bargaining agreement." *Gerber Truck*, 870 F.2d at 1153. Rather, the court found that the "written agreement" language in §302(c)(5)(B) of the LMRA did not limit the LMRA's scope only to "formal collective bargaining agreement[s]." *Gerber Truck*, 870 F.2d at 1154. The court further found that, "[s]ection 302(c)(5)(B) [of the LMRA], like §515 [of ERISA], prevents a court from giving force to oral understandings between union and employer that contradict the writings." *Gerber Truck*, 870 F.2d at 1154. In so holding, the court recognized that "the upshot may be harsh" because Gerber could be held accountable even though he believed that the union representative could be kept to his pledge when Gerber signed the participation agreement. *Gerber Truck*, 870 F.2d at 1155. Nevertheless, the pension fund was entitled to enforce even this "sham" agreement between the union and Gerber. *Gerber Truck*, 870 F.2d at 1155.

*Gerber Truck* is on point with this case. Here, Reeves signed an agreement that, on its face, stated that (1) the Laborers were a party to the agreement, (2) wages would be established and negotiated in party by the Laborers, and (3) fringe benefits would be in conjunction with the Laborers' CBA.

10

While the fencing addendums are not CBAs in the traditional sense, do not designate the Laborers as the exclusive bargaining unit, do not specify methods of resolving disputes, and do not require all employees to become members of the Laborers, the absence of these terms does not mean that the addendums are not enforceable pre-hire agreements under the LMRA or ERISA. *See Gerber Truck*, 870 F.2d at 1154. The fact that Reeves did not sign a separate CBA with the Laborers is equally irrelevant. *Gerber Truck*, 870 F.2d at 1154. Accordingly, the court finds that the agreement was valid under the LMRA and enforceable under ERISA.

Reeves once again makes too much of the cases on which it relies to argue that a recognition clause is essential to a valid pre-hire agreement under §301. *See Building and Construction Trades Council of the Metropolitan District v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc.* ("*Associated Builders II*"), 507 U.S. 218, 230, 113 S.Ct. 1190, 1197, 122 L.Ed.2d 565 (1993); *Martin v. Garman Construction Company*, 945 F.2d 1000, 1001 (7th Cir. 1991); *Oil, Chemical & Atomic Workers v. Union Tank Car*, 475 F.2d 194, 199 (7th Cir. 1973).  Reeves asserts that the Supreme Court has "unambiguously defined a valid, enforceable §8(f) pre-hire agreement as a 'collective bargaining agreement. . . .'" in *Associated Builders II*, 507 U.S. at 230, 113 S.Ct. at 1197. *See* Reply Brief, pp. 2-3.  First, the court notes that Reeves assumes *Associated Builders II* refers to a CBA only in its classic sense, pre-enactment of §8(f).  Regardless, a careful reading of this case and the cases on which it

11

relies shows that the language in *Associated Builders II* is descriptive, rather than proscriptive.  See *McNeff, Inc., v. Todd*, 461 U.S. 260, 266, 269-70, 130 S.Ct. 1753, 1756, 1758, 75 L.Ed.2d 830 (1983)(referring to a pre-hire agreement as merely "a contract" or "an agreement" and rejecting the view that a pre-hire agreement makes the union the exclusive bargaining agent); *Associated Builders and Contractors of Massachusetts/Rhode Island, Inc. v. the Massachusetts Water Resources Authority ("Associated Builders I")*, 935 F.2d 345, 356 (1st Cir. 1991)(noting that union status is immaterial in a pre-hire agreement), *judgment reversed in Associated Builders II*, 507 U.S. 218. *Martin* does nothing more than reference a pre-hire agreement. See 945 F.2d at 1001.  Finally, Reeves' reliance on a single statement in *Union Tank* that "contractual rights cannot exist separately and apart from the union's right to represent the union" takes that case out of context.  See 475 F.2d at 199.  The *Union Tank* court did not address the validity of a CBA, but rather the effect of a separate, contrary agreement between the union and the employer. See 475 F.2d at 196-97. This issue simply does not implicate the circumstances here.  Reeves' argument misunderstands the nature of a pre-hire agreement as, itself, an enforceable agreement creating the very contractual rights that Reeves argues must preexist.

     Next, Reeves argues that a lack of mutual assent defeats enforcement of the fencing addendums.  A lack of mutual assent is not an available defense to a pension fund's suit for contribu-

12

tions under ERISA. *Gerber Truck*, 870 F.2d at 1154. However, Reeves argues that the fund's "LMRA claim" is distinct from its "ERISA claim," and that a lack of mutual assent may be asserted as a defense to the LMRA claim.

It is true that defenses that are not available in ERISA suits may remain viable for claims brought under the LMRA in certain circumstances. *See, e.g.,* *A&C Environmental*, 301 F.3d at 774 n.3 ("[O]ur decision today does not hold that the protection against certain defenses that ERISA provides in claims by funds for delinquent fund contributions applies as well to claims by funds for union dues.") This case is not one of those situations. When a pension fund third-party beneficiary, rather than an original party to the contract (such as the union), brings suit to collect delinquent contributions, the LMRA does not create claims and defenses separate from the parties' rights and obligations under ERISA. *See* *Giordono v. Jones*, 867 F.2d 409, 416 (7th Cir. 1998)(Easterbrook, J., concurring) ("[T]he local union's willingness to wink at noncompliance with the collective bargaining agreement does not excuse Jones's disregard of his independent obligation to the trust."), *abrogated on other grounds in* *Yates v. Hendon*, 541 U.S. 1, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004); *Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc.*, 795 F.2d 1501, 1507 (9th Cir. 1986); *Central States, Southeast and Southwest Areas Pension Fund v. Kabbes Trucking Company*, No. 02 C 1809, 2004 WL 2644515, at *16-17 (N.D. Ill. 2004)(collecting cases). On a practical level, drawing a

13

distinction between a fund's claim under the LMRA and ERISA makes no sense:  A fund already is entitled to enforce an agreement regardless of whether there was a lack of mutual assent between the union and employer, or any other problem in the formation of the agreement, with limited exceptions not argued here.  *See* ***A&C Environmental***, 301 F.3d at 780; ***Iron Workers' Local No. 25 Pension Fund v. Nyeholt Steel, Inc.***, 976 F.Supp. 683, 689 n.10 (E.D. Mich. 1997).

Reeves cannot rely on ***Carporale v. Mar Les, Inc***. 656 F.2d 242 (7th Cir. 1981). Although factually similar to this case, ***Carporale*** was decided prior to the recognition of pre-hire agreements as independently enforceable collective bargaining agreements.  *See* ***J.W. Peters, Inc***. 398 F.3d at 973.  In addition, ***Carporale*** was decided only under the LMRA without reference to §515 of ERISA, which had not yet been enacted when ***Carporale*** was argued and certainly was not in force during the period at issue in that case. *See* 29 U.S.C. §1145. Both the Seventh Circuit and numerous district courts in this Circuit since have rejected ***Carporale's*** application to a fund's petition for delinquent funds, as the legal underpinnings of ***Carporale*** no longer are sound on facts such as these. *See* ***Kabbes Trucking***, 2004 WL 2644515, at *16-17.

Finally, Reeves' argument that the fencing addendums fail to establish an express promise or create an obligation to make contributions must be rejected. Reeves isolates a portion of one sentence in the addendums that states "[a]ll fringe benefits will

14

be in conjunction with the Ironworkers and Laborers' respective Building Collective Bargaining Agreements," and argues that it does not establish an obligation with clarity.  Viewed in their entirety, however, the fencing addendums demonstrate no ambiguity regarding the status of the Laborers as a party to the agreements and Reeves' obligation to conform to the separate Ironworkers and Laborers' CBAs, including the fringe benefits provisions of those CBAs that were specifically mentioned in each fencing addendum. Consequently, Reeves' assertion that he believed the fencing addendums created a relationship only with the Ironworkers is merely a statement of subjective understanding, contradicted by unambiguous terms contained in the contract. *See, e.g.,* ***A&C Environmental***, 301 F.3d at 781 (noting that if the defendant had simply reviewed the agreement, he would have observed that it required him to contribute to the pension funds). In any event, Reeves fails to explain how he could fail to comprehend his obligation to the Laborers' funds while understanding his obligation to the Iron Workers' funds, when the addendums refer to both obligations in the same breath.

_____

For the foregoing reasons, the Motion for Summary Judgment filed by the defendant, Reeves Fence Company, Inc., on December 2, 2005 is **DENIED.**

15

ENTERED this 26th day of May, 2005

                                    s/ ANDREW P. RODOVICH
                                       United States Magistrate Judge